Our next case for argument this morning is Coleman against Neal. Mr. Horwood. Good morning, and may it please the court. My name is Drew Horwood, and I represent petitioner Tyrus Coleman. This court should grant Mr. Coleman's petition for relief for two reasons. First, because his second trial for the attempted murder charge was barred by the doctrine of collateral estoppel. Second, and independently, because his attorney during that second trial rendered ineffective assistance of counsel. This court may grant Mr. Coleman's requested relief under AEDPA, because the Indiana court's decision to deny Mr. Coleman relief… Counsel? Under what? Under AEDPA, the Anti-Terrorism and Effective Death Penalty Act. Would you please use real words? I don't believe AEDPA is a word. I'm sorry, Your Honor. Under the Anti-Terrorism and Effective Death Penalty Act, because the Indiana court's decision… Just call it the act. Under the act. Because the decisions to deny Mr. Coleman relief on these two claims unreasonably applied clearly established federal law. Now, it's important to distinguish between these two claims because they're supported by different facts. Mr. Coleman's collateral estoppel claim does not involve a relitigation of the actual shootings. The collateral estoppel claim only involves examining what the first jury, the acquitting jury, did and must have decided through its acquittal. And this decision highlights the unreasonableness of the Indiana Supreme Court's decision to deny his collateral estoppel claim and reinstate his conviction. In the Indiana Supreme Court's opinion, it mistakenly believed that collateral estoppel depended on whether Mr. Coleman's general fear applied to both Dye and Jackson. But the court's opinion was simply not relevant. It answered a question that it was not asked and that was not at issue in the case. Collateral estoppel does not depend on whether or not both shootings were self-defense. More importantly, he is not required to establish that both were justified by self-defense. The jury instructions didn't ask the jury to determine that the first shooting was also self-defense, merely that it had to have been lawful for whatever reason. Now, as to the collateral estoppel argument, the language in the self-defense instruction uses the present tense, applying only if the person is committing a crime that is directly and immediately connected to the confrontation. In contrast to an ongoing crime such as robbery, in our case, the attempted murder would have been completed prior to the confrontation with Jackson. So couldn't a jury properly determine that the language is inapplicable for that reason? A reason unrelated to whether he committed the attempted murder. Your Honor, we do not believe that would have been a rational decision in this case. The language does use the present progressive is committing. However, the cases in which this has been applied, as the state points out, have sometimes included cases like robbery or unlawful gun possession, which would be ongoing throughout the subsequent event. But it does also cover, by the plain language of the statute, events that were ongoing that were interrupted. In our reply brief, we cited cases, for example, that involved drug distribution crimes, which would have been occurring and then interrupted by the use of force which followed. But more importantly in this case, the state's suggestions that the jury may have considered other crimes, for one, is perfectly consistent with the idea that they necessarily considered the charged attempted murder. In order to return a verdict of not guilty, on the basis of self-defense, the jury had to determine that Mr. Coleman did not commit any crime. So whether or not other crimes may have been considered alongside the attempted murder of Dye does not defeat his argument. And furthermore, there was no evidence in this case from which the jury could have rationally considered other potential crimes. The state mentions, for example, whether or not his gun was unlicensed for robbery or something like that. But there were no facts that would have enabled the jury to rationally consider those things, given that there was a charge of defense that was clearly directly and immediately connected to the use of force against Mr. Jackson. It would have been irrational to disregard that entirely at the expense of alternatives that were never mentioned and never at issue in the case. Now, continuing on, because we know that the jury acquitted Mr. Coleman based on self-defense, this largely comes down to an issue of the burden of proof. The state was asked to disprove at least one of the elements within the self-defense instruction beyond a reasonable doubt. Because we know that the state failed to do that, it means that it could not establish that shooting Dye was a crime. Bringing this full circle, collateral estoppel applies here because the first jury had already necessarily decided that the prosecution could not establish the attempted murder charge beyond a reasonable doubt. That is the exact question that was relitigated in the second trial. Excuse me. I'm sorry. Was there a question? I don't hear any. Please proceed. Okay. Your Honor, one other point I would like to bring up is that the real question here is whether a rational jury could have grounded its verdict upon any other issue. That's the standard from Ashe. Now, in its response brief, the state claims that Mr. Coleman confuses a rational jury with matters of probability. It may have merely been unlikely. Now, to that, we respond that rational does not mean possible, but it does not mean theoretically possible. Just because something may be possible under some very unique circumstances does not make any rational conclusion. And this is something that the Supreme Court and various circuit courts have held over and over again when it comes to this standard. We assume, rightly or wrongly, that rational juries follow the judge's instructions, that they don't nullify. Of course, those are theoretical possibilities, but we assume that those are not rational decisions. Furthermore, it's limited by the evidence and by common sense. There are decisions that, simply based on the lack of evidence to support them, a jury could not rationally reach, even though in some extremely strange situation it may be theoretically possible. Now, Your Honor, as Your Honors know, Mr. Coleman has also asserted a claim of ineffective assistance of counsel. We believe our briefs thoroughly address the claim for relief, and I'm happy to answer any additional questions you might have. If not, I would like to reserve the rest of my time for rebuttal. Certainly, Mr. Horwood. Thank you. Ms. Sikor. May it please the Court, Karen Shipper for the Warden. Coleman's jury could have rationally acquitted him of Jackson's murder without acquitting him of attempting to murder Dye. Coleman proposes one way the jury may have applied its instructions, but that is not enough for issue preclusion. To establish what the jury necessarily decided, Coleman must show that there was only one question before the jury, and it was decided in his favor. He cannot do that on this record. He relies upon the contemporaneous crime exception, a sentence in the self-defense instruction, for support that the Dye shooting resulted in an implicit acquittal in the context of the Jackson acquittal. But there are at least three other rational interpretations, any one of which is fatal to Coleman's issue preclusion claim. The instruction read, a person may not use force if he is committing a crime that is directly and immediately connected to the confrontation. The jury may have rationally understood, first, that committing a crime, as Judge Rovner pointed out, would require Coleman to have been committing a contemporaneous or ongoing crime at the time he shot Jackson. And they could have easily discounted the use of force exception and moved on and acquitted him on self-defense without considering the Dye shooting at all. It was not irrational for the jury to apply the rules of basic grammar and interpret committing a crime to require something that was occurring at the time of the Jackson shooting. It was written in the present progressive tense, and that specifically means there is a continuing action. Second, the jury may have interpreted the crime to require a crime against Jackson, meaning that Coleman was committing a crime against Jackson that was directly and immediately connected to his confrontation with Jackson. And that would have been rational because in the context of his trial, the parties presented these two shootings as separate events. They were two separate charges, separate offenses, and they were argued as such. And so the jury, in considering Jackson and whether Coleman was engaging in self-defense in that shooting, they may not have considered Dye at all because they knew they had to answer that question separately. Third, the jury may have viewed the term confrontation in a broader manner than Coleman suggests. It could indicate the entire heated dispute at Coleman's property, which lasted 12 minutes leading up to the shooting. In answering that question, they may have found that Coleman was not committing any crime related to the broader scope of the confrontation on his property. And in fact, the parties used the word confrontation in this particular manner, and the jury may have understood it in that way. The prosecution, in opening statement, said between the confrontation and the shooting is roughly 10 minutes. And in closing, Coleman said in his arguments, they came with guns. They started the confrontation. They came looking for trouble. And it's certainly not irrational for the jury to share the same meaning of confrontation in this broader context of this larger dispute that Coleman had no part in. He tried to act as peacemaker during the event, and he did not commit any crime such as the sharp burglary that brought this confrontation on. Now, let me ask you this. Wasn't the statement by Dye as he entered the yard absolutely critical in that it demonstrated that Dye posed a direct threat to Sharp? And along with his brandishing of a weapon, presented the basis for a defense of others' claim. No, Your Honor, I don't believe it was a critical statement. And even if it were, that evidence did come in in trial. Coleman testified to the content of the statement, and counsel presented witnesses to impeach Dye's inconsistent statement that he did not say anything when he entered the yard through other witnesses. And also on the video, it can be shown that perhaps Dye is speaking as he enters the yard. But it's also a couple of these things. I understand that Coleman himself testified as to what Dye said. But the jury could view that testimony as self-serving. And wouldn't it be critically important for the jury to learn that Dye acknowledged those same statements under oath in the prior trial? I don't believe so, Your Honor, particularly when the physical acts that are the charged crime were captured on video and they were unaccompanied. The where is Sharp at statement was unaccompanied by any movement towards the studio or threatening action towards Coleman. Coleman remained on the phone a few steps back from Jackson as Dye approached Jackson. And it was at that moment that Coleman stepped forward while still speaking on the phone and shot Dye in the temple. And then again, as he fell to the ground. So I don't believe that the statement is critical, particularly given that it already came into evidence and was used by defense counsel in his closing and also is accompanied by the video evidence in which Dye does not make any threatening movement towards Coleman whatsoever. But getting back to the issue preclusion claim very briefly, Ash requires that the evidence be viewed from a practical and realistic sense and not in a hyper technical way. And that's precisely what Coleman is asking. He's latched on in a hyper technical reading of the contemporaneous crime language that was never discussed at trial. The prosecution never suggested that Coleman's use of force should be precluded because he committed a crime against Dye. And these these offenses were never linked in the way that he said, and they do not share any common element, any critical issue of material fact that the Supreme Court cases have applied issue preclusion. Typically, these are done in clear cut cases of identity. Was the defendant the robber? Was the defendant the person who mailed the bomb? And the jury in acquitting the defendant said no. And that's not the case that we have here. It's much more convoluted. And the jury was presented not only with an unexplained and undefined sentence in the self-defense instruction. But Coleman's counsel also presented to alternative presented an alternative defense as to mens rea. So at bottom, Coleman's argument rests on too many assumptions. His reading of the contemporaneous crime exception language is not the only reading. And he has the very high burden of showing that it is. And he and went by presenting alternative defenses at trial. It's nothing more than pure speculation. So the existence of all of these alternative possibilities is fatal to his claim. And if there are no further questions of the court, the warden respectfully request. This court affirmed the denial of Coleman's habeas petition. Certainly, counsel. Mr. Horwood, anything further? Mr. Horwood. It looks like he's talking, but we can't hear anything. Sorry, your honor. Hello. Okay. Let's try again. Mr. Horwood. Anything further? Yes, your honor. I do. You're responding to the state's point about the ash case on the Supreme Court's line of cases. Ash exists. And the standard asks us to look into the pleading, the evidence, the charge and all other relevant matter. Because it assumes that the basis for the jury's verdict is not entirely clear. The Supreme Court's four cases that cited in the brief that all apply this standard and grant relief, none of those cases involved explicit statements by the defense counsel or the prosecution, for that matter, in linking the offenses or informing the jury of the consequences a decision on one count would have on the other. That's not a part of what the ash standard asks. Furthermore, the core issue here is, I'm sorry, and with respect to the contemporaneous crime exception itself, the state reads the language irrationally to produce absurd results. The Indiana Supreme Court has said that literal application of the exception would nullify claims for self-defense and produce absurd results. It's really the state here that is reading the contemporaneous crime exception in a tortured and untenable way. We've already discussed the is committing present progressive tense element, but that instruction has never been used to limit events that were cut off, that still triggered the other confrontation in which self-defense is being invoked. Furthermore, the state's examples of crimes that are being discussed are simply not crimes that in some cases even involve Mr. Coleman at all, so the jury would have no rational reason to think about them, and furthermore are not directly and immediately connected to the confrontation in which self-defense was used. It simply does not satisfy the strict causal nexus required by Indiana law. Very finally, the confrontation here does have to mean the exchange of gunfire with Jackson. The confrontation cannot include both the event in which self-defense was claimed and everything leading up to it. It would swallow the language. Thank you. Thank you very much, Mr. Horwood.